E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

**EXHIBIT A**

## IN THE IOWA DISTRICT COURT OF SCOTT COUNTY

| | |
|---|---|
| YESENIA MONTELONGO, *on behalf of herself and all others similarly situated*, | Case No.: __CVCV301038__ |
| Plaintiff, | |
| v. | **CLASS ACTION PETITION AND JURY DEMAND** |
| ST. AMBROSE UNIVERSITY, | |
| Defendant. | |

## CLASS ACTION PETITION

Plaintiff Yesenia Motelongo brings this action on behalf of herself and all others similarly situated against Defendant St. Ambrose University ("Defendant"). Plaintiff alleges as follows based on her own personal knowledge and experiences as to the facts specifically pertaining to herself and based upon information and belief, further to the investigation of her counsel, as to the remaining allegations. Plaintiff believes that a reasonable period of discovery will reveal substantial evidentiary support for the facts alleged herein.

## NATURE OF THE ACTION

1.      St. Ambrose University, a private university with a total enrollment of more than 2,200 students, offers undergraduate major concentrations in 52 academic areas, as well as a number of graduate-level degree programs.

2.      Ms. Montelongo brings this class action on behalf of herself and all other similarly situated students (the "Class") who contracted with the University for live, in-person, on-campus instruction and meaningful access to professors and on-campus facilities and events—none of which the University actually provided to them for approximately half of the Spring 2020 academic term.

3.      Specifically, after Plaintiff and the Class paid tuition and fees for the Spring 2020 academic term in exchange for Defendant's provision of these material in-person components of their educational experience, St. Ambrose University responded to the Coronavirus ("COVID-19") pandemic by shutting the campus down and shifting entirely to online "remote" learning—depriving

Plaintiff and all Class members of the in-person classes, services and on-campus college experiences for which they had bargained and, egregiously, without refunding any of the tuition or fees they had paid (in advance) to receive those benefits for the entirety of the semester.

4.      Simply put, Plaintiff and the members of the Class did not agree, and never would have agreed, to pay over $16,000 in tuition and fees for a semester of "virtual" college—and yet that is exactly what the St. Ambrose University provided them, without refunding any of the tuition or fees they had paid for the in-person classes, services and experiences that they never received.

5.      Notably, Plaintiff does not contend that she received a comparatively inferior instruction, though it is certain that she did. She similarly does not challenge St. Ambrose University's decision to shift to remote learning.  Rather, Plaintiff brings this action because the value of the remote learning experience she and her fellow class members received is substantially less than the value of the on-campus experience St. Ambrose University promised and that Plaintiff paid for in tuition and fees.  Plaintiff and class members, through this suit, seek a *pro rata* refund of the portion of fees and tuition that was paid to St. Ambrose University during the time period that the campus was closed and classes went online.

6.      Plaintiff entered into a contractual agreement with St. Ambrose University to pay tuition and fees for the Spring semester of 2020 in exchange for, *inter alia*, access to campus facilities and activities, and in-person instruction in a physical classroom.  Plaintiff and class members fulfilled their obligations when they paid the required tuition and mandatory fees for the Spring semester of 2020.  In fact, Plaintiff paid higher tuition and fees when she enrolled in St. Ambrose University's on-campus program, rather than its online courses which cost substantially less. However, Plaintiff and class members did not receive the services and experiences they paid for, and which were promised, after St. Ambrose University transitioned to remote learning.

7.      Plaintiff and the Class members entered into contractual agreements with the St. Ambrose University whereby Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities and other related services.

2

8.      The terms of the contractual agreement were set forth in publications from St. Ambrose University, including in the St. Ambrose University Course Catalog (the "Course Catalog"). The Course Catalog is directed at students, including Plaintiff and Class Members.

9.      The Course Catalog clearly and unequivocally implied that the courses described therein would be conducted in-person.  The Course Catalog also touts the many resources and facilities available to students on-campus, which also implies in-person participation.

10.     Defendant's other publications, including brochures, marketing materials as well as its website, also make representations about in-person instruction, on-campus experiences, internships and facilities; all of which created an obligation on the part of Defendant to provide in-person educational services for Plaintiff and the Class Members.

11.     On March 12, 2020, Defendant announced that, because of the COVID-19 pandemic, all previously live classes would be conducted remotely beginning March 29, 2020.  St. Ambrose University subsequently announced that remote learning would continue through the remainder of the Spring 2020 semester.

12.     As a result of the closure of its facilities, Defendant did not deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the Class Members contracted and paid.

13.     The online learning options offered to St. Ambrose University students were subpar in practically every aspect, including the lack of facilities, materials and access to faculty. Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback and critique. The remote learning options were in no way the equivalent of the in-person education for which Plaintiff and Class Members contracted and paid.

14.     Defendant refuses to refund or to reimburse Plaintiff and the Class any portion of the fees and tuition they paid for in-person education and services that are no longer being provided.

15.     Defendant did not provide in-person education, experiences or related services for approximately 50% of the Spring 2020 Semester. Plaintiff did not enter into an agreement with

Defendant for online education, but rather sought an in-person education from Defendant's institution.

16.     Plaintiff and the Class Members are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided. Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it did not provide.

17.     By this class action lawsuit Plaintiff seeks, for herself and all others similarly situated (as defined below), Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 Semester when classes moved online and campus services ceased being provided.

## THE PARTIES

18.     Plaintiff Yesenia Montelongo is a citizen and resident of West Liberty, Iowa. During the Spring 2020 Semester, Plaintiff was an undergraduate student at St. Ambrose University majoring in social work.

19.     Defendant St. Ambrose University is a private university with its principal place of business in Davenport, Scott County Iowa.

## VENUE AND JURISDICTION

20.     This Court has personal jurisdiction over St. Ambrose University because it is located in Davenport, Iowa, it is headquartered and regularly conducts business in Iowa and otherwise has sufficient minimum contacts with Iowa to justify the exercise of personal jurisdiction.

21.     Venue is appropriate in Scott County, Iowa because Defendant is located within Scott County, Iowa. And, on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, occurred within Scott County, Iowa.

## FACTUAL ALLEGATIONS

I.     **Plaintiff and Class Members Paid Tuition and Fees for the Spring 2020 Semester**

22.     Plaintiffs and Class Members are individuals who paid the cost of tuition and other mandatory fees for the Spring 2020 Semester at St. Ambrose University.

23.     Spring 2020 Semester classes at St. Ambrose University began in or about January 2020, and final exams for the Semester were scheduled to conclude in May 2020.

24.     Approximate tuition costs at St. Ambrose University for the Spring 2020 Semester are $16,645 for full-time undergraduate students.

25.     St. Ambrose University students who elect to attend in-person also pay mandatory fees for the Spring 2020 Semester. By way of example, undergraduate students at St. Ambrose University paid mandatory fees of approximately $140 for Spring Semester 2020.[1]

26.     Plaintiff paid Defendant tuition for the Spring 2020 Semester. Plaintiff also paid various fees to Defendant for the Spring 2020 Semester. Plaintiff has not been provided a refund of any of the tuition or fees that she paid for the Spring 2020 Semester, despite the fact that in-person classes were not held after March 29, 2020.

**II.     The Course Catalog for the Spring 2020 Semester is Replete with Promises and Representations Regarding In-Person Instruction and Activities**

27.     When Plaintiff and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring 2020 Semester, Plaintiff and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying for selected courses.

28.     The Course Catalog provided Plaintiff and Class Members with information regarding the courses offered, the relevant departments, credit hours, classroom activities and the manner in which each course is to be held.  The Course Catalog for the Spring 2020 Semester at St. Ambrose University contains numerous promises and representations relating to in-person instruction and activities.

---

[1]     The tuition and fees described herein are provided by way of example; total damage amounts—which may include other fees not listed herein but that were not refunded—will be proven at trial.

29.     For example, the Course Catalog touts the Student Life and Support Services offered by St. Ambrose University, representing that the purpose of in-person, on-campus student life "is to augment academic life by encouraging growth in the co-curricular and extra-curricular areas so that students may enjoy the total educational process."   Through the Course Catalog, St. Ambrose University promises that "[r]esources are available to help meet students' various needs—whether informational, health, psychological, financial, vocational, academic, social, or spiritual":[2]

**Student Life and Support Services**

The purpose of student life and support services is to augment academic life by encouraging growth in the co-curricular and extra-curricular areas so students may enjoy the total educational process. All student services are based on the Catholic-Christian character of the University.

Resources are available to help meet students' various needs—whether informational, health, psychological, financial, vocational, academic, social, or spiritual.

30.     In fact, in the Course Catalog St. Ambrose University states that in-person, on-campus student activities "supports the educational goals and mission of the university by promoting a sense of community integration, student self-worth and self- confidence through campus involvement:"[3]

**Student Activities**

The Student Activities Office supports the educational goals and mission of the university by promoting a sense of community integration, student self-worth and self-confidence through campus involvement. Activities are designed to improve the quality of campus and community life while offering student leadership opportunities to assist in their personal development. Activities often include Midnight Breakfast, speakers, Multicultural Week, concerts, and leadership classes are planned in conjunction with the Campus Activities Board, and Intercultural Life.

---

[2]     https://www.sau.edu/academics/academic-resources/registrar/university-catalog;     2019-2021 Course Catalog at 11.

[3]     https://www.sau.edu/academics/academic-resources/registrar/university-catalog;     2019-2021 Course Catalog at 13.

31.     The Course Catalog also makes representations about the resources available to students on campus, including the library:[4]

> The Library (1996) is a resource for St. Ambrose and the Quad Cities community. The four-story building houses books, periodicals, audio-visual materials, and the Office of Information Technology (located in the lower level). There are group and individual study rooms, a media program room, and media production areas. Desktop computers are provided on the first floor with several study kiosks located throughout the building. A listing of Library services is available at www.sau.edu/library.

32.     The Course Catalog also promises students access to the wellness and recreation center as part of a "wellness programs for all students" which St. Ambrose University represents will help students "enhance skills, foster life-long friendships, and teach understanding of true sportsmanship while promoting healthy lifestyle choices":[5]

> **Wellness and Recreation**
>      Located in the Wellness and Recreation Center, Campus Recreation promotes and coordinates campus-wide competitive and recreational sports, as well as group fitness, outdoor recreation, and wellness programs for all students and employees. Events and programs enhance skills, foster life-long friendships, and teach the understanding of true sportsmanship while promoting healthy lifestyle choices.

33.     The course descriptions likewise make representations about in-person classroom instruction.  For example, in "SWK 400. Field Instruction I• 3 credits" for the Spring 2020 Semester St. Ambrose University promises an "experience takes place in a community agency and provides students with opportunities to integrate classroom learning in a supervised practice setting and to demonstrate social work competency development."[6]

---

[4]     https://www.sau.edu/academics/academic-resources/registrar/university-catalog;     2019-2021 Course Catalog at 6.

[5]     https://www.sau.edu/academics/academic-resources/registrar/university-catalog;     2019-2021 Course Catalog at 13.

[6]     https://www.sau.edu/academics/academic-resources/registrar/university-catalog;     2019-2021 Course Catalog at 122.

34. Plaintiff hereby incorporates the Course Catalog into the Complaint by reference.

35. Plaintiff's field of study at St. Ambrose University relies extensively on in-person instruction, feedback, and a high level of collaboration, which is made more feasible through in-class instruction.

36. In-person classes are critical to Plaintiff's degree program because it is necessary for students in the program to a conduct in-person exercises, and to engage in dialogue during class and access professors outside of class, in order to adequately learn and fully engage with the material.

### III. In Response to COVID-19, St. Ambrose University Was Closed and all In-Person Classes were Cancelled

37. On or about March 12, 2020, St. Ambrose University announced that, because of the global COVID-19 pandemic, effective March 29, 2020, all in-person classes would be suspended and that all classes would continue to be held in online/remote format for the remainder of the Spring 2020 Semester.

38. As a result of the closure of its campus and facilities, Defendant has not delivered the educational services, facilities access and/or opportunities for which Plaintiff and the Class Members contracted and paid.

39. Plaintiff and the Class Members are therefore entitled to a refund of all tuition and fees for services, facilities access and/or opportunities that Defendant has not provided.

40. Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for access to certain amenities and services it unquestionably did not provide.

41. Plaintiff and the Class Members did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll and/or pay for enrollment on an in-person basis.

42. Notably, Defendant offers both in-person and online learning options. These options are *not* interchangeable. Instead, Defendant's entire academic structure and its students' educational experiences are built around the distinction between Defendant's in-person and its online program.

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

43.      Students are given the option of which program they choose to enroll and, at the time of application, students make clear that they are seeking to contract with Defendant for an in-person educational experience.

44.      The online and the in-person programs also, not surprisingly, charge different tuition amounts. Undergraduate and graduate students attending the in-person program pay significantly more for live classroom instruction and for access to on-campus facilities and services.

45.      The cost of attending Defendant's in-person program is more than twice as much as the cost of taking courses on-line.  Defendant's tuition and fee structure demonstrate that in-person learning and on-campus experiences have a greater value than the on-line, remote learning experience that Defendant offered beginning Spring Semester 2020.  For example, St. Ambrose University charges $475 per credit to online students while charging students who attend in-person $970 per credit—more than twice as much.[7]

---

[7]      *Cf.*  https://www.sau.edu/cost-and-aid/tuition-and-fees  and  https://online.sau.edu/tuition-costs/.

46.     Defendant markets on its website the on-campus, in-person experience at St. Ambrose University as a benefit of enrollment and specifically markets the benefits of classroom learning, "hands-on learning," small class size, personal interaction with professors, and other academic opportunities, as a benefit of the on-campus learning experience:[8]

**The Academic Resources of a State School, the Friendliness of a Small College**
*Get the Best of Both Worlds*

St. Ambrose offers dozens of majors and the same top-notch academics found at larger universities and colleges in Iowa. In fact, the academic opportunities at Ambrose – internships, research, hands-on learning – go above and beyond many of our state and private school competitors.

But what sets us apart is our small class sizes and approachable professors who get to know you and are dedicated to your instruction, providing you with opportunities you might not receive at other colleges in the Quad Cities or elsewhere.

47.     St. Ambrose University markets to prospective students by promising "small class sizes [which] allow faculty to get to know you and your goals, aspirations, interests, and challenges" and that faculty members will "walk alongside you on your educational journey":[9]

## Academic Accessibility

**SMALL CLASSES; BIG OPPORTUNITIES**

Be free to explore, grow, and impact the world. At SAU, there are no limits on what you can learn, and do.

SAU is not a large state school. Here, we focus on providing an education infused with personal, holistic compassion and care. Our small class sizes allow faculty to get to know you and your goals, aspirations, interests, and challenges. Then, they walk alongside you on your educational journey.

---

[8]     https://www.sau.edu/about-sau/why-sau

[9]     https://www.sau.edu/about-sau/why-sau/academic-accessibility

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT



48.     In its marketing representations St. Ambrose University emphasizes the benefits of experiencing an in-person educational experience.  Defendant affirms that they "believe education is strengthened when it is taught by people you know," and that prospective students can expect a "close-knit academic community" and "one-on-one attention":[10]

## Dedicated Faculty

**THEY MAKE ALL THE DIFFERENCE**

A professor is an educator, but at St. Ambrose, our professors are so much more.

We believe education is strengthened when it is taught by people you know – and who know you – as a person. By someone who supports your goals and pushes you to go further so you discover and act on your unlimited potential.

This happens at St. Ambrose.

You will feel drawn to our close-knit academic community, one-on-one attention, and the priority professors give to you throughout your academic career.

Begin your journey with us, and we'll walk with you side-by-side.

---

[10]     https://www.sau.edu/about-sau/why-sau/dedicated-faculty

49.     Defendant acknowledges the value of community, connections with other students and faculty and the on-campus experience as a benefit that students will receive if they choose to attend in-person.  St. Ambrose University emphasizes the value of "collaborating on campus-wide intercultural events and activities that prepare you to become a productive citizen in a diverse world":[11]

**CULTURE**

We promote your educational, cultural, and social growth by collaborating on campus-wide intercultural events and activities that prepare you to become a productive citizen in a diverse world.

50.     In fact, Defendant markets the campus to prospective and returning undergraduate students by promising that they will have the opportunity to "join or lead a student club or organization" that will enable them to "work[] side-by-side with [their] peers" and that this will deepen students' "drive and focus on academics, your career, faith and spirituality, social justice, service to others, or a personal passion":[12]

## Clubs and Organizations

**GET INVOLVED AT SAU**

At St. Ambrose, you can join or lead a student club or organization – we have dozens!

Working side-by-side with your peers, there's a real belonging that deepens your drive and focus on academics, your career, faith and spirituality, social justice, service to others, or a personal passion.

---

[11]     https://www.sau.edu/about-sau

[12]     https://www.sau.edu/student-life/clubs-and-organizations

51.     Defendant represents that students who choose to enroll and pay for an on-campus education will have an on-campus experience enriched by personal interactions with other students:[13]

## Where Students Help Students Succeed

....................

From the *AmbroseZine*:



> *The St. Ambrose Student Success Center is tucked cozily into the first-floor corner of Ambrose Hall that formerly served as the Registrar's Office.*

> *As students filter in and out of the door, it's impossible not to notice the comfortable exchange of smiles and friendly greetings. Filled with tables, whiteboards, and snacks, the new office space made its debut in January of 2016. It houses 45 tutors, all students themselves, who devote hours each week helping nearly a quarter of SAU's undergraduate students reach their highest potential.*

---

[13]     https://www.sau.edu/academics/academic-resources/student-success-center

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

52.     Defendant also represents that access to on-campus activities and facilities are a part of the in-person educational "experience" and tells students that these resources will "enhance your skills" and "foster life-long friendships":[14]

# Wellness and Recreation Department

Get involved in campus-wide intramural (competitive and recreational sports), as well as club sports, fitness, and wellness programs.

You will enhance your skills, foster life-long friendships, and learn true sportsmanship while making healthy lifestyle choices.

53.     Defendant even represents that it has the "best college housing in the Midwest" and that the goal of its in-person education experience is to foster community, inviting prospective and returning students to "join in the recreational, educational, spiritual, and cultural programs that define and grow our community":[15]

While living at SAU, you'll experience community during late-night study sessions and in deep conversations with friends and suitemates; as you meet classmates for a cup of coffee or for lunch in Cosgrove; as you jump into a sand volleyball game outside Franklin Hall; or as you join (or lead) a floor activity.

Our goal is to foster a safe, supportive, and empowering community that will challenge and support you to grow and develop holistically. Not only will you live in the best college housing in the Midwest, but you can also join in the recreational, educational, spiritual, and cultural programs that define and grow our community.

54.     Plaintiff specifically bargained to receive these and other educational benefits and in fact paid higher costs for the benefits of an in-person education.

---

[14]     https://www.sau.edu/student-life/wellness-and-recreation

[15]     https://sau.edu/student-life/residence-life

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

55.     The online learning options offered to St. Ambrose University students after Defendant transitioned to remote learning in Spring 2020 was subpar in practically every aspect and a shadow of what student were originally promised; from the lack of facilities, materials and access to faculty, among other things.

56.     This is particularly true for students like Plaintiff, who is pursuing a degree in social work, because she is unable to receive in-person instruction, feedback or critique.  St. Ambrose University promises its Social Work majors "professional training" and "placement in a community agency for 400 hours."[16]

57.     After all classes at St. Ambrose University went remote, however, Plaintiff was unable to collaborate or to use on-campus resources in the manner necessary for success in her field of study, and was unable to receive and/or benefit from the in-person interaction with professors and guest lecturers that she was promised and had expected at the time of enrollment for the Spring 2020 Semester. Moreover, office hours for professors are essentially non-existent given that professors are unable to see their students to provide in-person assistance.

58.     The remote learning options are in no way the equivalent of the in-person education for which Plaintiff and Class Members contracted and paid. The remote education provided was worth nowhere close to the amount charged to Plaintiff and Class Members for Spring 2020 Semester tuition. The tuition and fees for in-person instruction at St. Ambrose University are higher than tuition and fees for other online institutions because such costs cover not only the academic instruction at St. Ambrose University, but encompass an entirely different experience which includes but is not limited to:

•     Face to face interaction with professors, mentors, and peers;

•     Access to facilities such as libraries, laboratories, and study rooms;

•     Student governance and student unions;

---

[16]      https://www.sau.edu/academics/academic-resources/registrar/university-catalog;    2019-2021 Course Catalog at 62.

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultural, and other activities;

- Social development and independence;

- Hands on learning and experimentation;

- Networking and mentorship opportunities.

59.     Through this lawsuit Plaintiff seeks, for herself and on behalf of the Class Members, disgorgement of the pro-rated portion of tuition and fees paid to Defendant, proportionate to the amount of time that remained in the Spring 2020 Semester when classes moved online and campus services ceased being provided. Plaintiff seeks return of these amounts on behalf of herself and the Class as defined below.

## CLASS REPRESENTATION ALLEGATIONS

60.     Plaintiff brings this action on behalf of herself and a Class defined as follows:

> All persons who paid Defendant, in whole or in part, tuition, fees, and/or room and board, for the Spring 2020 semester, for in-person educational services which Defendant failed to provide, and whose tuition, fees, and/or room and board were not refunded.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns and employees. Further excluded from the Class is this Court and its employees. Also excluded from the class are students who enrolled in education programs that Defendant completely and exclusively offered online prior to the closure of in-person classes. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

61.     The definition of the Class is unambiguous. Plaintiff is a member of the Class she seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

62.     *Numerosity*. Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable, thus satisfying the requirement of Rule 1.261(1). The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records. However, given that over 2,200 students are enrolled at Defendant's institution in a given year, the number of Class Members is expected to exceed 2,000 and thus greatly exceeds a number where joinder would be possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

63.     *Common Questions of Law or Fact*. As required by Rule 1.261(2), there are questions of law or fact common to the Class.  These common questions of law or fact include:

a.   Whether Defendant engaged in the conduct alleged;

b.   Whether Defendant's actions deprived Plaintiff and the Class Members of benefits for which they already paid, including the benefit of in-person instruction, housing, meals, and student activities;

c.   Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

d.   Whether Defendant breached identical contracts with Plaintiff and the Class Members;

e.   Whether Defendant violated the common law of unjust enrichment;

f.   Whether Defendant converted Plaintiff's and the Class Members' refunds and/or rights to refunds; and

g.   The nature and extent of damages and other remedies to which the conduct of Defendant entitles Class Members.

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

Thus, Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. And the injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees and/or room and board.

64. *Fair and Efficient Adjudication of a Controversy*. A class action satisfies the requirement of Rules 1.262(2)(b), because a class action will permit the fair and efficient adjudication of the controversy. Plaintiff satisfies the criteria enumerated in Rule 1.263 for determining this issue, *inter alia* as follows:

a. First, joint and common interests exist among members of the Class, per the criteria of Rule 1.263(1)(a), because they have all paid tuition and fees to Defendant and been damaged by Defendant through its practice of denying refunds to Class Members for tuition and fees paid for the portion of the Spring 2020 term that was held remotely. Moreover, the prosecution of separate actions by members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants per Rule 1.263(1)(b). Furthermore, there are the common questions of whether, *inter alia*, Defendant's actions deprived Plaintiff and the Class Members of benefits for which they already paid, including the benefit of in-person instruction, housing, meals, and student activities, and

whether such conduct breached the contract between Defendant and the Class or, alternatively, constituted unjust enrichment. The adjudication of these questions with respect to individual members of the Class as a practical matter would be dispositive of the interests of the Class as a whole per the criteria in Rule 1.263(1)(c). Finally, the common questions predominate over any individual questions per the criteria in Rule 1.263(1)(e).

b. <u>Second</u>, the class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members. The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not. Absent a class action, Class members will continue to suffer harm and Defendant's misconduct will proceed without remedy. These circumstances satisfy the criteria in Rule 1.263(1)(f),(g),(m).

c. <u>Third</u>, there are no unusual management difficulties that would preclude class treatment.  The Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

Individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. It is also desirable to concentrate the litigation of the aims of Plaintiff and Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district. Given the similar nature of Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties. Moreover, Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making final injunctive relief and declaratory relief regarding the Class appropriate.

d. _Fourth_, there are no other known actions brought by Class members that are not representative parties and thus they have no apparent substantial interest in individually controlling the prosecution of a separate action.

65. *Adequate Representation.*  In accordance with Rule 1.262(2)(c) and 1.263(2), Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class. Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not

conflict with the interests of the other Class Members that she seeks to represent. Indeed, Plaintiff's claims are typical of the claims of the other Class Members in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Plaintiff was a student enrolled at St. Ambrose University in the Spring 2020 term, and Plaintiff paid Defendant the cost of tuition and fees for her education at St. Ambrose University. Like other Class Members, Plaintiff was deprived of the benefit of her bargain when students were instructed to leave Defendant's campus, forced to take online classes, and were completely or partially denied a refund for tuition, fees, and/or room and board. Further, there are no defenses available to Defendant that are unique to Plaintiff. Plaintiff has retained counsel competent and experienced in class action litigation and Plaintiff and her counsel intend to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

## **CLAIMS FOR RELIEF**

### **CLAIM I**
### **Breach of Contract**
### **(By Plaintiff, Individually and on Behalf of the Class, Against Defendant)**

66.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

67.     Plaintiff and Class Members entered into identical, binding contracts with Defendant.

68.     When Plaintiff and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring 2020 Semester, Plaintiff and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying for selected courses.

69.     Defendant's Course Catalog constitutes an offer to enter a contractual agreement.

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

70.     The Course Catalog provided Plaintiff and Class Members with information regarding the courses offered, the relevant department, credit hours, classroom activities and the manner in which each course is to be held.

71.     Plaintiff's and Class Members' payment of tuition and fees were intended to cover in-person education, experiences and services for the entirety of the Spring 2020 Semester.

72.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.

73.     Plaintiff and members of the Class fulfilled their end of the bargain when they paid monies due for Spring 2020 Semester tuition. Tuition for Spring 2020 Semester was intended to cover in-person educational services from January through May 2020. In exchange for tuition monies paid, Plaintiff and members of the Class were entitled to in-person educational services through the end of the Spring 2020 Semester.

74.     Defendant materially breached the parties' contractual agreement by failing to provide in-person educational services for the entirety of the Spring 2020 Semester. The provisions of the contract breached by Defendant include, but are not limited to the provision setting forth the details of in-person educational services as described in the Course Catalog for the Spring 2020 Semester as well as other publications, including brochures, marketing materials and on its website. The Spring 2020 Semester Course Catalog indicated classes would be administered in an in-person, on-campus setting.  The Course Catalog did not make any reference to the administration of courses in an online format.

75.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above by failing to provide in-person educational services.

76.     Defendant has retained monies paid by Plaintiff and the Class for their Spring 2020 Semester tuition and fees, without providing them the benefit of their bargain.

77.     Plaintiff and the Class Members have suffered damage as a direct and proximate result of Defendant's breach, including, but not limited to, being deprived of the education, experience and services to which they were promised and for which they have already paid.

78.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class Members are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees and other expenses that were collected by Defendant for services that it did not provide.

79.     Defendant's performance under the contract is not excused due to COVID-19, and all conditions precedent to bringing this action, if any, have been satisfied or waived.

80.     Indeed, Defendant should return the pro-rated portion of any Spring 2020 Semester tuition and fees for education services not provided since St. Ambrose University shut down on March 29, 2020.

81.     Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

82.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiff and Class Members that relate to those in-person educational services that were not provided after St. Ambrose University shut down on or about March 29, 2020.  In-person educational services were not provided for approximately approximately 50% of the Spring 2020 Semester.

## CLAIM II
## Unjust Enrichment
### (By Plaintiff, Individually and on Behalf of the Class,
### Against Defendant in the Alternative to Claim I)

83.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 61 of this complaint.

84.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant in the alternative to Claim I, to the extent there is no contract governing the subject matter of this dispute.

85.     Plaintiff and the Class Members conferred a benefit on Defendant in the form of monies paid for Spring 2020 Semester tuition and other fees in exchange for certain services, experiences and activities.

E-FILED  2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

86.     Tuition for Spring 2020 Semester was intended to cover in-person educational services from January through May 2020. In exchange for tuition monies paid, Class Members were entitled to in-person educational services through the end of the Spring Semester.

87.     Defendant voluntarily accepted and retained this benefit by accepting payment.

88.     Defendant has retained this benefit even though Defendant has failed to provide the education, experience and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.

89.     Accordingly, Defendant should return the pro-rated portion of any Spring 2020 Semester tuition and fees for education services not provided since St. Ambrose University shut down on March 29, 2020.

90.     It would be unjust and inequitable for Defendant to retain the benefit and Defendant should be required to disgorge this unjust enrichment.

91.     Defendant should be required to disgorge all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.  An order determining that this action may be maintained as a class action pursuant to Rule 1.261 *et seq.* of the Iowa Rules of Civil Procedure, and declaring Plaintiff as the representative of the Class and her counsel as counsel for the Class;

b.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.  For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E-FILED 2021 MAY 21 2:47 PM SCOTT - CLERK OF DISTRICT COURT

d.   For prejudgment interest on all amounts awarded;

e.   For an order of restitution and all other forms of equitable monetary relief;

f.   For injunctive relief as pleaded or as the Court may deem proper and

g.   For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Pursuant to Iowa Rule of Civil Procedure 1.902, Plaintiff demands a trial by jury on all issues in this action so triable.

Dated: May 21, 2021                                      Respectfully submitted,


/s/ J. Barton Goplerud
**J. Barton Goplerud, AT0002983**
**Brian O. Marty, AT0011622**
SHINDLER ANDERSON GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa  50265-5749
Telephone:      (515) 223-4567
Facsimile:      (515) 223-8887
Email:             goplerud@sagwlaw.com
                         marty@sagwlaw.com


**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
1395 Brickell Avenue, Ste 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801
E-mail: fhedin@hedinhall.com
            dhall@hedinhall.com

*Pro Hac Vice Application Forthcoming*

***Counsel for Plaintiff and the Putative Class***

## IN THE IOWA DISTRICT COURT OF SCOTT COUNTY

| | |
|---|---|
| YESENIA MONTELONGO, *on behalf of herself and all others similarly situated*, | Case No.: _____ |
| Plaintiff, | |
| v. | **ORIGINAL NOTICE** |
| ST. AMBROSE UNIVERSITY, | |
| Defendant. | |

TO EACH OF THE ABOVE-NAMED DEFENDANT:

You are hereby notified that there is now on file in the office of the Clerk of the above court a Petition in the above-entitled action, a copy of which is attached hereto (along with copies of any documents filed with it).  The Plaintiffs' attorneys are J. Barton Goplerud and Brian O. Marty of the law firm of Shindler, Anderson, Goplerud & Weese, P.C., whose address is 5015 Grand Ridge Drive #100, West Des Moines, Iowa 50265, whose phone number is 515-223-4567, and whose fax number is 515-223-8887.

Iowa is a state which utilizes electronic filing in all counties.  General rules and information on electronic filing are contained Iowa Court Rules Chapter 16.  Information regarding requirements related to the protection of personal information in court filings is contained in Iowa Court Rules Chapter 16, Division VI.  You must serve a motion or answer within 20 days after service of this Original Notice upon you by using the Iowa Judicial Branch Electronic Document Management System (EDMS) at www.iowacourts.state.ia.us/efile, unless you obtain from the court an exemption from electronic filing requirements.  If you do not file your appearance, motion to answer within 20 days from the date you are served with this Original Notice, judgment by default will be rendered against you for the relief demanded in the Petition.

CLERK OF COURT
Scott County Courthouse
400 W 4th St.
Davenport, IA 52801

*NOTE: The attorney who is expected to represent the Defendant(s) should be promptly advised by Defendant(s) of this Original Notice.*

*If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your District ADA Coordinator at 563-328-4145.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).*

1

E-FILED  2021 MAY 24 8:43 AM SCOTT - CLERK OF DISTRICT COURT

# Iowa Judicial Branch

*Case No.* **CVCV301038**

*County* **Scott**

*Case Title*   MONTELONGO YESENIA VS ST. AMBROSE UNIVERSITY

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(563) 328-4145** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **05/24/2021 08:43:00 AM**



*District Clerk of* Scott                    *County*

**/s/ Cindy Cooksey**

**AFFIDAVIT OF SERVICE**

| Case:<br>CVCV301038 | Court:<br>Scott County District Court | County:<br>Scott, IA | Job:<br>5754242 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Yesenia Montelongo | | Defendant / Respondent:<br>St. Ambrose University | |
| Received by:<br>HSPS Legal Services | | For:<br>Shindler, Anderson, Goplerud & Weese P.C. | |
| To be served upon:<br>St. Ambrose University | | | |

I, Cathy Rashall, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   St. Ambrose University/Barb Nicol, 220 N Main St Ste 600, Davenport, IA 52801

Manner of Service:   Business, Jun 8, 2021, 2:58 pm CDT

Documents:   Original Notice; Class Action Petition and Jury Demand (Received Jun 4, 2021 at 2:33pm CDT)

**Additional Comments:**
1) Successful Attempt: Jun 8, 2021, 2:58 pm CDT at 220 N Main St Ste 600, Davenport, IA 52801 received by St. Ambrose University/Barb Nicol. (Server's visual approximation) Age: 60; Ethnicity: Caucasian; Gender: Female; Weight: 245; Height: 5'4"; Hair: White; Barb identified herself as authorized personnel able to accept legal documents on behalf of Judith Herrmann, and accepted legal documents. Judith does her Business remotely she is not in the Office.

Fees: $5

State of: Iowa

County of: Scott   ) SS:

Cathy Rashall                         Date

HSPS Legal Services
160 Southgate Ave Ste A
Iowa City, IA 52240
319-354-2010

Signed and sworn to before me, a notary public, on this
_____ 8 _____ day of _____ June _____, 2021

Notary Public

My Commission Expires   May 20, 2022

TIMOTHY WM. HARTER
Commission Number 796248
My Commission Expires
May 20, 2022
IOWA