IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| YESENIA MONTELONGO, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ST. AMBROSE UNIVERSITY,<br><br>    Defendant. | **No. 3:21-cv-00057-RGE-SBJ**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

## I.    INTRODUCTION

Plaintiff Yesenia Montelongo, individually and on behalf of all others similarly situated, brings an action against Defendant St. Ambrose University, alleging claims for breach of contract and unjust enrichment under Iowa law. Montelongo's claims arise from St. Ambrose's March 2020 decision to discontinue in-person classes and shift entirely to online "remote" learning in response to the COVID-19 pandemic. St. Ambrose moves to dismiss Montelongo's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

For the reasons set forth below, the Court grants in part and denies in part St. Ambrose's motion.

## II.    BACKGROUND

The Court accepts the following facts as true for the purpose of analyzing St. Ambrose's motion to dismiss. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

During the spring semester of 2020, Montelongo was an undergraduate student at St. Ambrose—a private university in Davenport, Iowa—where she majored in social work. Compl. ¶¶ 18–19, ECF No. 1-1. Montelongo alleges claims on behalf of herself and a Class,

which she defines as: "All persons who paid [St. Ambrose], in whole or in part, tuition, fees, and/or room and board, for the Spring 2020 semester, for in-person educational services . . . ." *Id.* ¶ 60. Montelongo alleges she, and other "Class Members," entered into a contractual agreement with St. Ambrose whereby they paid tuition and fees in exchange for St. Ambrose's "in-person educational services, experiences, opportunities and other related services." *Id.* ¶ 7. Montelongo alleges the terms of the contractual agreement were set forth in St. Ambrose's publications, including St. Ambrose's Course Catalog and website. *Id.* ¶ 8; *see also id.* ¶¶ 46–53 (citing various information from St. Ambrose's website, including a representation that St. Ambrose has "the best college housing in the Midwest").

St. Ambrose's has an online program, which Montelongo was not enrolled in. *See id.* ¶¶ 41–42. St. Ambrose charges students enrolled in the online program $475 per credit hour, while students enrolled in person are charged $970 per credit hour. *See id.* ¶ 45. Based on $970 per credit hour costs for in-person tuition, Montelongo and other Class Members paid an approximate spring semester tuition cost of $16,645 for fulltime undergraduate students. *See id.* ¶¶ 24, 45. Montelongo alleges students who attend classes in person also pay $140 in mandatory fees per semester. *Id.* ¶ 25.

Around March 12, 2020, in response to the COVID-19 pandemic, St. Ambrose announced it was suspending all in-person classes starting on March 29, 2020. *Id.* ¶¶ 11, 37. St. Ambrose shifted to online classes for the remainder of the spring semester and closed down the entire campus, including its facilities. *Id.* ¶¶ 3, 37–38. St. Ambrose did not provide in-person education, access to campus facilities, or on-campus services for "approximately 50% of the Spring 2020 Semester." *Id.* ¶¶ 3, 15. The spring semester lasted approximately from January 2020 until final exams concluded in May 2020. *Id.* ¶ 23.

Montelongo alleges St. Ambrose's Course Catalog for the Spring 2020 Semester "contains

2

numerous promises and representations relating to in-person instruction and activities" and "touts the many resources and facilities available" on campus. *Id.* ¶¶ 9, 28; *see also id.* ¶¶ 29–32 (quoting information from the Course Catalog regarding campus resources from Student Life and Support Services, the Student Activities Office, the library, and the Wellness and Recreation Center). The Course Catalog also contains: a broad disclaimer that it is "not intended to be—and should not be relied upon—as a statement of the university contractual undertakings;" and a reservation of St. Ambrose's right to "in its sole judgment . . . make changes of any nature in its program, calendar, academic schedule, or charges whenever it is deemed necessary or desirable." Course Catalog 2019–2021 at 5, St. Ambrose University, https://www.sau.edu/academics/academic-resources/ registrar/course-catalog.

Montelongo alleges she and other Class Members did not receive the "services and experiences they paid for" when St. Ambrose closed the campus and transitioned to remote learning on March 29, 2020, in response to the COVID-19 pandemic. *Id.* ¶¶ 3, 6. Montelongo alleges the campus closure resulted in St. Ambrose not delivering "the educational services, facilities access[,] and/or other opportunities for which [Montelongo] and the Class Members contracted and paid." *Id.* ¶ 38. Montelongo alleges that although St. Ambrose's in-person tuition is "more than twice as much as the cost of taking courses" online, St. Ambrose did not refund any of the spring 2020 semester tuition. *Id.* ¶¶ 4, 14, 45. Montelongo alleges the value of the remote learning experience she received was less than the value of the "on-campus experience." *Id.* ¶ 5. She seeks a pro rata refund of the fees and tuition for the time St. Ambrose's campus was closed and she attended classes online. *Id.*

Montelongo filed a class action lawsuit in the Iowa District Court for Scott County in May 2021. *See generally id.* St. Ambrose removed to this Court. Notice Removal, ECF No. 1. Montelongo brings a claim for breach of contract, alleging St. Ambrose breached its promise to

provide in-person educational services, as set forth in the Course Catalog and other materials. ECF No. 1-1 ¶¶ 66–82. Alternatively, Montelongo alleges a claim for unjust enrichment. *Id.* ¶¶ 83–91. To the extent there is no contractual agreement between the parties, Montelongo alleges St. Ambrose retained the benefit of payment for the Spring 2020 semester tuition and fees even though it failed to provide the "education, experiences and services for which the tuition and fees were collected." *Id.* ¶ 88.

Now before the Court is St. Ambrose's motion to dismiss Montelongo's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. Dismiss, ECF No. 5. Montelongo resists St. Ambrose's motion. Pl.'s Resist. Def.'s Mot. Dismiss, ECF No. 13. The parties did not request oral argument, and the Court declines to order it, finding the parties' briefing adequately presents the issues. *See* Fed. R. Civ. P. 78(b).

Additional facts are set forth below as necessary.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JP Morgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). The Court must accept as true all factual allegations in the complaint, but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555–56). "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most

4

favorably to the complainant." *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S at 678. Plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)). "The contracts upon which a claim rests are evidently embraced by the pleading." *Id.* (cleaned up). Thus, on a motion to dismiss a breach of contract claim, "the court may examine the contract documents in deciding" the motion. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

## IV.    DISCUSSION

### A.    Breach of Contract

In Claim I, Montelongo alleges St. Ambrose breached a contractual agreement to provide in-person education and services as set forth in the Spring 2020 Semester Course Catalog and other ancillary materials. *See* ECF No. 1-1 ¶¶ 66–82. To establish a breach of contract claim under Iowa law, a plaintiff must show: 1) the existence of a contract; 2) the terms and conditions of the

contract; 3) that plaintiff has performed all the terms and conditions required under the contract; 4) the defendant's breach of the contract; and 5) that plaintiff has suffered damages as a result of the breach. *See Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 706 (Iowa 2016). "[T]he contract terms must be sufficiently definite for the court to determine the duty of each party and the conditions of performance." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).

St. Ambrose argues Montelongo's claim fails because she does not identify any material definite terms guaranteeing in-person education and services. ECF No. 5 ¶ 3. St. Ambrose also argues Montelongo's claim ignores St. Ambrose's wide deference to "establish, maintain, and enforce" its own academic standards, and therefore she cannot establish material breach. *Id.* Finally, St. Ambrose argues Montelongo fails to allege a plausible breach of contract claim because her damages are speculative. *Id.* The Court considers each of St. Ambrose's arguments in turn.

### 1.   Contract terms

"The relationship between a university and a student is contractual in nature." *Corso v. Creighton Univ.*, 731 F.2d 529, 531 (8th Cir. 1984). "[T]he issue of what documents constitute a contract [between a defendant university and a plaintiff student] is also properly one for the jury to decide." *Warren v. Drake Univ.*, 886 F.2d 200, 202 (8th Cir. 1989). Relevant documents may include: academic catalogs, codes of conduct, student handbooks, and institutional regulations. *See, e.g.*, *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

A contract "includes not only what is expressly stated by its terms but also what is necessarily implied to give effect to its express terms." *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 727 (Iowa 2014). "Courts imply contractual terms where the obligation arise[s] from the language used or [is] indispensable to give effect to the intent of the parties." *Id.*

(alterations in original) (internal quotation marks and citation omitted). However, "[r]eading an existing contractual provision as having an essential corollary is different from adding a new implied term to a contract." *Id.* at 729. "The former is an interpretive exercise and is permissible even if the agreement is integrated. 'An integrated contract can contain an implicit, unstated, but necessary term . . . .'" *Id.* (omission in original) (quoting *Acoustic Processing Tech., Inc. v. KDH Elec. Sys. Inc.*, 697 F. Supp. 2d 146, 161 (D. Me. 2010)). "Contracts between a university and a student have been construed narrowly." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 944 (S.D. Iowa 2018), *aff'd*, 979 F.3d 1184 (8th Cir. 2020).

St. Ambrose argues Montelongo fails to identify any definite terms promising in-person instruction and services within the Course Catalog and other alleged ancillary materials. Def.'s Mem. Supp. Mot. Dismiss 4, ECF No. 5-1. Montelongo argues St. Ambrose's Course Catalog and website provide sufficiently definite terms implying "an in-person and on-campus education was a core and central tenant of what both parties believed [St. Ambrose] was offering." ECF No. 13 at 8–9.

"[T]his is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous" *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020). While courts disagree as to whether terms of a contract between a university and a student can be derived from advertising and promotional materials, marketing materials "can help define the scope of an implied contract." *Botts v. Johns Hopkins Univ.*, No. CV ELH-20-1335, 2021 WL 1561520, at *13 (D. Md. Apr. 21, 2021); *compare Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *6 (N.D. Ill. Feb. 4, 2019) ("Promotional materials are not among the terms of the contract between universities and their students."), *with Durbeck v. Suffolk Univ.*, No. CV 20-10985-WGY, 2021 WL 2582621, at *8 (D. Mass. June 23, 2021) (recognizing Massachusetts law permits advertisements and

promotional materials to form the basis of a contract between a university and a student). The Iowa Supreme Court has not addressed whether promotional materials can constitute part of a contract between a university and a student. However, the court has allowed the jury to determine which documents constitute a contract in the employment context. *Cannon v. Nat'l By-Prods., Inc.*, 422 N.W.2d 638, 640 (Iowa 1988). Here, there are multiple alleged sources comprising the contract at issue. Given that the issue of what documents constitute a contract is a question for the jury, the Court considers St. Ambrose's Course Catalog and other referenced marketing materials from St. Ambrose's website. *See Warren*, 886 F.2d at 202.

Montelongo contends the Course Catalog contains specific promises regarding "the courses offered, the relevant department, credit hours, classroom activities, and the manner in which each course is to be held." ECF No. 1-1 ¶ 28. Montelongo further alleges the Course Catalog promises on-campus resources and activities available to students. *See id.* ¶¶ 29–32. Montelongo points to:

- The course description for "SWK 400. Field Instruction I" for the Spring 2020 Semester, which states: "experience takes place in a community agency and provides students with opportunities to integrate classroom learning in a supervised practice setting and to demonstrate social work competency development.*"* *Id.* ¶ 33; *see also* Course Catalog 2019–2021 at 122, St. Ambrose University, https://www.sau.edu/academics/academic-resources/registrar/course-catalog.

- The section on Student Life and Support Services, which provides: "The purpose of student life and support services is to augment academic life by encouraging growth in the co-curricular and extra-curricular areas so students may enjoy the total educational process." ECF No. 1-1 ¶ 29.

- The section on Student Activities, which provides: "The Student Activities Office

supports the educational goals and mission of the university by promoting a sense of community integration, student self-worth and self-confidence through campus involvement. Activities are designed to improve the quality of campus and community life . . . . Activities often include Midnight Breakfast, speakers, Multicultural Week, [and] concerts . . . . *Id.* ¶ 30.

- The representations about the library as a resource "for St. Ambrose and the Quad Cities community." *Id.* ¶ 31.

- The section on Wellness and Recreation, which provides: "Located in the Wellness and Recreation Center, Campus Recreation promotes and coordinates campus-wide competitive and recreational sports . . . ." *Id.* ¶ 32.

Montelongo also contends St. Ambrose's website markets an on-campus, in-person experience by emphasizing "'hands-on learning,' small class size, personal interaction with professors, and other academic opportunities." *Id.* ¶ 46; *see also id.* ¶¶ 47–52 (representations regarding "on-on-one attention" from "dedicated faculty" and cultural growth through collaborating on campus-wide intercultural events and activities). The residence life section of St. Ambrose's website touts "the best college housing in the Midwest." *Id.* ¶ 53.

District courts across the country have considered breach of contract and unjust enrichment claims relying on similar facts and similar purported contract documents and language. Some district courts considering similar claims have granted motions to dismiss where plaintiffs failed to demonstrate "an identifiable contractual promise" for in-person instruction and services. *Gociman v. Loyola Univ. of Chi.*, 515 F. Supp. 3d 861, 867 (N.D. Ill. 2021) ("Plaintiffs' breach of contract claim fails for a second reason: plaintiffs have failed to allege a specific promise for in-person instruction."); *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020), *appeal dismissed*, No. 20-56424,

2021 WL 6196969 (9th Cir. July 8, 2021) ("Plaintiffs have failed to identify any specific language in the 2019–2020 Catalog or any other publication from Occidental that promises in-person instruction."); *Chong v. Ne. Univ.*, 494 F. Supp. 3d 24, 28 (D. Mass. 2020) ("Northeastern argues that plaintiffs fail to state a claim because they have not plausibly established that the parties' agreement included a right to in-person instruction. The court agrees."); *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 194 (S.D.N.Y. 2021) ("The statements on which [the plaintiff] relies, although tacitly presupposing and almost certainly envisioning the familiar norm of in-person instruction, do not contain or constitute a specific promise of such.").

Other courts have found course catalogs and other publications sufficient to plausibly demonstrate an implicit promise to provide in-person education and/or services. *Martin v. Lindenwood Univ.*, No. 4:20-CV-1128 RLW, 2021 WL 3077665, at *6 (E.D. Mo. July 21, 2021) (finding plaintiff's allegations regarding a difference in tuition for in-person and online courses and the university's marketing of the on-campus experience sufficient to plausibly demonstrate contractual promises for in-person education); *Warner v. Wartburg Coll.*, No. 21-CV-2029-CJW-MAR, 2021 WL 3276375, at *8 (N.D. Iowa July 30, 2021) (finding plaintiff identified plausible promises for in-person "field experiences," an opportunity to live in residence halls, and access to on-campus facilities); *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 997 (N.D. Cal. 2020) (finding course catalog's inclusion of information about the day, time, and location of courses, and the materials referencing the in-person nature of spring semester and "campus life" were sufficient to state plausible breach of implied contract claim on a motion to dismiss); *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020) (finding promises "regarding the benefits of its in-person, on-campus program, including opportunities to work directly with faculty in their labs, vibrant and diverse campus life, access to superior technology, and robust on-campus support" sufficient to survive a motion to dismiss).

Considering St. Ambrose's Course Catalog in conjunction with its other alleged marketing materials, Montelongo fails to plausibly demonstrate a contract term implying a promise to provide in-person classes. However, St. Ambrose's Course Catalog and website can plausibly be read to imply promises to provide on-campus services and access to on-campus facilities.

First, St. Ambrose's Course Catalog and website cannot be plausibly read to promise on-campus, in-person instruction for its courses. The Course Catalog provides descriptions of the courses. However, none of the descriptions identify a classroom location or any other indication the courses are to be attended on campus. *Cf. Saroya*, 503 F. Supp. 3d at 997 (denying the motion to dismiss a breach of contract claim where "course catalogues include information about the 'days and times' and 'the location' in which the courses would be held"). Descriptions of the subject matter of courses cannot be read to imply a promise of in-person instruction without the Court attaching a wholly new term to the alleged contract. *See Alta Vista Props.*, 855 N.W.2d at 729. Montelongo fails to plausibly allege contract terms promising on-campus, in-person course instruction.

Additionally, the "Field Instruction I" course description does not imply a promise to in-person, on-campus instruction. The Course Catalog describes a field experience at a "community agency," which may imply an obligation to provide an in-person experience at a community agency. *See* ECF No. 1-1 ¶ 33. However, in-person, on-campus instruction is not a necessary corollary to providing students enrolled in the Field Instruction I course with an in-person experience at a community agency. *Cf. Alta Vista Props.*, 855 N.W.2d at 729. For the Court to find a promise to provide in-person instruction on campus from the description of the Field Instruction I course, it would have to add an entirely new implied term to this provision. *Cf. id.* Further, Montelongo does not allege she was registered for and had paid for the Field Instruction I course. Therefore, even if Montelongo alleged sufficient facts showing an implied promise to

11

provide an in-person field experience and somehow demonstrated that implied promise extended to on-campus instruction, she could not show she was entitled to such instruction. *Cf. Warner*, 2021 WL 3276375, at *8 (finding plaintiff who was enrolled in field course plausibly alleged she was entitled to in-person field experience based on the language used in the course description). Further, she could not show resulting damage from any failure by St. Ambrose to provide in-person field instruction for a course in which she was not enrolled. As such, Montelongo fails to plausibly demonstrate an implied contract term for in-person instruction in the Field Instruction course description.

References to the Student Activities Office, the library, and the Wellness and Recreation Center contained in the Course Catalog, as well as representations made about interactions with faculty, on-campus housing, and campus-wide events on St. Ambrose's website support finding an implicit promise to provide in-person services and access to on-campus facilities. *See* ECF No. 1-1 ¶¶ 29–32. The description of the Student Activities Office references "campus involvement" through activities designed to improve the "quality of campus . . . life." *Id.* ¶ 30. It is reasonable to infer such activities would be centered on St. Ambrose's campus and implemented for the purpose of engaging in the on-campus community. Further, the representations about the library as a study space for students and the Wellness and Recreation Center's promotion of campus-wide competitive and recreational sports implies the opportunity to access such facilities on campus. *See id.* ¶¶ 31–32. The Court considers the on-campus nature of these resources and facilities in light of the differences in tuition as listed in the Course Catalog. The Course Catalog lists a price per credit hour for the online program that is approximately half of the price-per-credit-hour for full-time undergraduate students. Course Catalog 2019–2021 at 19, St. Ambrose University, https://www.sau.edu/academics/academic-resources/registrar/course-catalog. The difference in the price-per-credit-hour between the in-person and online programs

supports finding, at this early stage of the proceedings, a plausible implicit promise to provide on-campus services and access to on-campus facilities. *Cf. Martin*, 2021 WL 3077665, at *6; *Bergeron*, 2020 WL 7486682, at *8. Viewing the facts in the light most favorable to Montelongo and drawing all reasonable inferences in her favor, the Court finds Montelongo plausibly alleges implied contract terms wherein St. Ambrose promised to provide in-person services and access to on-campus facilities.

The Court must consider the plausible contract terms Montelongo alleges in light of the disclaimer and reservation of rights in St. Ambrose's Course Catalog. The disclaimer provides:

> The St. Ambrose University Catalog contains current information on the calendar, admissions, degree requirements, fees, room and board, regulations, and course offerings. It is not intended to be—and should not be relied upon—as a statement of the university's contractual undertakings.

> St. Ambrose reserves the right in its sole judgment to make changes of any nature in its program, calendar, academic schedule, or charges whenever it is deemed necessary or desirable. This right includes changes in course content; rescheduling classes with or without extending the academic term; canceling scheduled classes and other academic activities; and requiring or affording alternatives for scheduled classes or other academic activities.

Course Catalog 2019–2021 at 5, St. Ambrose University, https://www.sau.edu/academics/academic-resources/registrar/course-catalog.

St. Ambrose argues Montelongo's breach of contract claim must fail because the Course Catalog expressly precludes students from relying on its terms in any capacity. ECF No. 5-1 at 5–6. St. Ambrose further argues Montelongo may not rely upon the Course Catalog for her breach of contract claim because it expressly reserved St. Ambrose's right "to take the exact steps it did to protect the health and safety of the St. Ambrose University community." *Id.* at 6. Montelongo argues the disclaimer language fails to address all of the activities and facilities for which Montelongo paid tuition. ECF No. 13 at 14–15. Thus, she argues, if the disclaimer is applicable, it does not permit St. Ambrose to completely cancel all in-person classes and prevent

access to all educational facilities and services. *Id.* at 15.

The Iowa Supreme Court has not addressed the effect of disclaimers in the context of a university-student relationship. In the employment context, the Iowa Supreme Court has determined an employer's use of an explicit, conspicuous disclaimer disavowing any intent to create contractual rights will preclude the formation of a contract between an employer and an at-will employee. *See Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 289 (Iowa 1995) (finding the terms and the scope of the disclaimer in the employee handbook would not lead a reasonable person to believe the employer "assented to be bound to the provisions contained in the manual"). However, unlike the employer and at-will employee relationship, the university-student relationship is contractual in nature. *See Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997) ("Employment relationships in Iowa are presumed to be at-will."); *Corso*, 731 F.2d at 531. Further, in its reply, St. Ambrose concedes a contract exists between St. Ambrose and Montelongo. Def.'s Reply Supp. Mot. Dismiss 5, ECF No. 14. Given the contractual nature of the university-student relationship and St. Ambrose's concession that a contract between the parties exists, the Court declines to consider a general disclaimer of all contractual undertakings in ruling on a motion to dismiss. *See Corso*, 731 F.2d at 531; *see also Jackson v. Drake Univ.*, 778 F. Supp. 1490, 1493 (S.D. Iowa 1991) ("The financial aid agreements entered into by [the university and student] constitute valid contracts.); *Doe v. Colgate Univ.*, No. 5:15-CV-1069 (LEK/DEP), 2017 WL 4990629, at *19 (N.D.N.Y. Oct. 31, 2017), *aff'd*, 760 F. App'x 22 (2d Cir. 2019) ("While a university can disclaim the existence of a specific promise through the use of such a disclaimer, it cannot unilaterally disclaim all contractual relations between the parties." (cleaned up) (quoting *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 n.7 (S.D.N.Y. 1998))).

The Course Catalog's disclaimer and reservation of rights are too vague for the Court to find on a motion to dismiss that they preclude St. Ambrose's liability for failure to provide

in-person services and access to on-campus facilities. While St. Ambrose reserves the general right to make changes "of any nature" to its course content and schedule, the Court "cannot, at this stage of the litigation, rule as a matter of law that the disclaimer includes the right" to completely eliminate in-person services and access to on-campus facilities. *See Omori v. Brandeis Univ.*, 533 F. Supp. 3d 49, 55 (D. Mass. 2021); *see also McCarthy v. Loyola Marymount Univ.*, No. 2:20-CV-04668-SB (JEMx), 2021 WL 268242, at *5 (C.D. Cal. Jan. 8, 2021) (finding defendant failed to demonstrate the general reservation of rights permitted a complete change to the manner of instruction); *Bergeron*, 2020 WL 7486682, at *6–7 ("Plaintiffs allege a number [of] promises made by RIT with respect to the benefits of enrollment in the more expensive in-person, on-campus program . . . . These allegations clearly extend beyond coursework to the entirety of the educational experience. Read in the light most favorable to Plaintiffs, as it must be at this stage of the proceedings . . . the disclaimer . . . is not broad enough to extinguish Plaintiffs' claims."); *Saroya*, 503 F. Supp. 3d at 997. Further, finding St. Ambrose's disclaimer precludes it from being contractually bound would be contrary to St. Ambrose's concession that a contract does exist. *See* ECF No. 14 at 5. Such a finding would suggest that any existing contract would be illusory. The Court declines to make this finding.

Because Montelongo alleges St. Ambrose's breach of contract extends beyond the manner of classroom instruction to failing to provide in-person services and access to on-campus facilities, the Court cannot find, on a motion to dismiss, the reservation of rights extends to changes to in-person services and access to on-campus facilities. Dismissal is not warranted for Montelongo's breach of contract claim based on the alleged failure to provide in-person services and access to on-campus facilities. Dismissal is warranted to the extent Montelongo alleges a breach of contract claim based on a failure to provide in-person instruction.

####   2.   Material breach

St. Ambrose argues even if Montelongo identifies contract terms promising in-person education and services, her breach of contract claim still fails because she cannot demonstrate material breach by St. Ambrose. ECF No. 5-1 at 8–9. St. Ambrose contends Montelongo's claim does not consider the deference afforded to universities in making academic decisions. *Id.* As such, St. Ambrose contends Montelongo's breach of contract claim constitutes an impermissible educational malpractice claim. *Id.* at 9. Montelongo argues her claim does not attack the quality of the education St. Ambrose provided, but instead focuses on St. Ambrose's failure to provide the in-person education experience for which she and other Class Members paid. ECF No. 13 at 19–20.

Iowa courts "have refused to recognize a cause of action in Iowa for educational malpractice." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 121 (Iowa 2001). Educational malpractice claims "center[ ] on complaints about the reasonableness of the conduct engaged in by educational institutions in providing their basic functions of teaching, supervising, placing, and testing students in relationship to the level of academic performance and competency of the student." *Id.*

Courts are divided on the issue of whether the education malpractice doctrine bars tuition reimbursement suits arising from university responses to COVID-19. Several courts considering breach of contract claims involving facts and circumstances similar to Montelongo's have found the claims do not implicate educational malpractice. *See, e.g., Michel v. Yale Univ.*, 547 F. Supp. 3d 179, 186–87 (D. Conn. 2021); *Rhodes v. Embry-Riddle Aeronautical Univ.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021) ("Plaintiff's claims do not require judicial inquiry of the educational value of online classes or the academic adequacy of those offerings. Instead, the essence of Plaintiff's claims is that he contracted for in-person classes and received

online classes instead—a paradigmatic contract claim."); *McCarthy*, 2021 WL 268242, at \*3 ("Here, the decision to suddenly shift to online education can hardly be characterized as an academic decision within the meaning of that doctrine. Indeed, the decision to cease in-person instruction involved no judgment, much less an academic one, because Defendant was mandated by government orders to do so."); *Hiatt v. Brigham Young Univ.*, 512 F. Supp. 3d 1180, 1186 (D. Utah 2021) ("Plaintiff is not asking the Court to interfere in BYU's academic or pedagogical choices by requiring BYU to provide in-person education or change its methods of education. Rather, Plaintiff is asking for a refund of tuition and/or mandatory fees for the breach of contract alleged."); *Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 30 (D. Conn. 2021) ("[T]he Court agrees with the majority of cases that have deemed the educational malpractice doctrine inapposite to the [breach of contract] theory of liability alleged here."). By contrast, other courts have reached the opposite conclusion, reasoning such claims require the court to analyze the quality and value of the education plaintiffs received after classes were moved online and thus amount to educational malpractice claims. *See, e.g.*, *Gociman*, 515 F. Supp. 3d at 867 (determining the educational malpractice doctrine barred plaintiffs' claims where the court would have to make determinations about the quality and value of the education defendant-university provided in the spring of 2020); *Lindner*, 2020 WL 7350212, at \*7 (determining plaintiff's claims invoked the educational malpractice doctrine because the theory underlying plaintiff's claims was that the education she received after the transition to remote learning was worth less than the amount charged).

The Court finds persuasive the reasoning of a majority of courts that determined breach of contract claims seeking tuition reimbursement due to COVID-19 responses do not constitute impermissible educational malpractice claims. Viewing the facts in the light most favorable to Montelongo, her claim constitutes "a paradigmatic contract claim." *Rhodes*, F. Supp. 3d at 1357. Montelongo's claim does not require the Court to analyze St. Ambrose's academic decisions or

the quality of the instruction. *Cf. McCarthy*, 2021 WL 268242, at *3; *Hiatt*, 512 F. Supp. 3d at 1186. Her breach of contract claim does not center on the quality of the education she received. But rather it centers on St. Ambrose's failure to provide in-person education and services at all. This is evidenced by Montelongo's request for a refund of the tuition and fees for in-person education and services she alleges St. Ambrose did not provide despite being contractually obligated to do so. As such, the Court finds Montelongo's claim does not constitute an impermissible educational malpractice claim. Dismissal of Claim I is not warranted on this ground.

### 3.    Damages

St. Ambrose argues Montelongo's breach of contract claim must fail because she does not plead resulting damages from any alleged breach. ECF No. 5-1 at 9–10. St. Ambrose contends damages for the purported difference in value between in-person and online instruction is inherently subjective and speculative. *Id.* Montelongo argues her allegations are sufficient to support a plausible claim for damages from St. Ambrose's alleged breach. ECF No. 13 at 18–19.

"In Iowa, the measure of damages is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed." *Optimal Interiors, LLC v. HON Co.*, 774 F. Supp. 2d 993, 1011 (S.D. Iowa 2011) (internal quotation marks omitted) (quoting *DeWaay v. Muhr*, 160 N.W.2d 454, 458 (Iowa 1968)). "Thus, compensatory damages are designed to put the injured party in as good a position as he would have had if performance had been rendered as promised." *Id.* (quoting *DeWaay*, 160 N.W.2d at 458). "Foreseeability of the type of damage is the focus of Iowa law. These damages are generally categorized as consequential damages." *Yost v. City of Council Bluffs*, 471 N.W.2d 836, 840 (Iowa 1991).

Montelongo seeks a pro-rata refund of the tuition and fees paid to St. Ambrose during the period when St. Ambrose closed campus and classes went online until the end of the 2020 spring

semester. ECF No. 1-1 ¶¶ 16–17. Montelongo provides information about the difference in cost for online tuition as opposed to in-person tuition. *See id.* ¶ 45 (listing the per credit hour prices for the online program and the full-time undergraduate program). Montelongo also alleges the time frame for which classes were moved online and the campus was closed. *Id.* ¶¶ 37–38. Montelongo alleges she and other class members paid higher tuition for certain "educational services, facilities, access and/or opportunities," which St. Ambrose failed to provide during the portion of the semester it closed campus and moved classes online. *See id.* ¶¶ 37–38, 44–45. It is reasonably foreseeable the closure of St. Ambrose's campus would result in students' deprivation of in-person services and access to on-campus facilities. *Cf. Yost*, 471 N.W.2d at 840. Considering Montelongo's damages allegations in conjunction with the difference in cost between in-person and online tuition and the extent of the campus closure in the light most favorable to Montelongo, Montelongo alleges sufficiently definite damages to survive a motion to dismiss. St. Ambrose is not entitled to dismissal of Claim I on this ground.

**B.     Unjust Enrichment**

To the extent there is no contract governing the dispute at issue, Montelongo alleges a claim for unjust enrichment. ECF No. 1-1 ¶¶ 83–91. Initially, St. Ambrose argued Montelongo fails to state a claim for unjust enrichment because she incorporates by reference her allegations for breach of contract. ECF No. 5-1 at 11. Thus, St. Ambrose argued Montelongo's pleading error of incorporating allegations that a contract existed between the parties defeats her unjust enrichment claim. *Id.* St. Ambrose further argued Montelongo's unjust enrichment claim failed on the merits. *Id.* at 11–12. Then, in response to Montelongo's argument that she is permitted to plead a claim for unjust enrichment in the alternative to her breach of contract claim, St. Ambrose, for the first time, conceded a contract existed between the parties. *See* ECF No. 14 at 5 ("The University does not deny the existence of a contract with Plaintiff; only the terms in question.");

*see also* ECF No. 13 at 24–25; ECF No. 5-1 at 3 (arguing Montelongo fails to allege "any existing contract with definite terms").

First, the Court considers whether it will address the argument and concession St. Ambrose provides in its reply brief supports its motion to dismiss. Then, the Court addresses Montelongo's unjust enrichment claim.

"[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief." *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007); *Republican Party of Minn. v. Kelly*, 247 F.3d 854, 881 (8th Cir. 2001), *rev'd in part*, 534 U.S. 1054 (2001) ("It is well established that issues not argued in an opening brief cannot be raised for the first time in a reply brief."); *Union Cnty. V. Piper Jaffray & Co.*, 741 F. Supp. 2d 1064, 1110 (S.D. Iowa 2010) ("The Court declines to address arguments raised for the first time in a Reply Brief."). Local Rule 7(g) permits reply briefs to "assert newly-decided authority or to respond to new and unanticipated arguments made in the resistance." LR 7(g).

In its reply brief, St. Ambrose relies on *Warner* to argue dismissal is appropriate because it does not dispute the existence of a contract. ECF No. 14 at 5 (citing 2021 WL 3276375, at *10 wherein the court found the defendant's recognition of the existence of a contract precluded plaintiff from maintaining an unjust enrichment claim on the same matter). The decision in *Warner* was published four days after St. Ambrose moved to dismiss Montelongo's claims. *See* ECF No. 5; *Warner*, 2021 WL 3276375. Though St. Ambrose asserts a new argument in its reply by conceding the existence of a contract for the first time, it does so because it relies on a newly decided authority. The Court therefore considers St. Ambrose's concession and reply argument. *Cf. McGhee v. Pottawattamie Cnty., Iowa*, 547 F.3d 922, 929 (8th Cir. 2008).

"A claim for unjust enrichment 'arises from the equitable principle that one shall not be permitted to unjustly enrich oneself by receiving property or benefits without making

compensation therefor.'" *Legg v. W. Bank*, 873 N.W.2d 763, 771 (Iowa 2016) (quoting *Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Human Servs.*, 613 N.W.2d 674, 679 (Iowa 2000)). "The doctrine[ ] of unjust enrichment . . . [is] based upon the concept of implied contract." *Kunde v. Est. of Bowman*, 920 N.W.2d 803, 807 (Iowa 2018), *as amended on denial of reh'g* (Jan. 4, 2019). Under Iowa law, "[a]n express contract and an implied contract cannot coexist with respect to the same subject matter." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Legg*, 873 N.W.2d at 771). "A party is not barred from pleading unjust enrichment in the alternative to a breach of contract claim when the existence and terms of a contract are in dispute." *Meardon v. Reg.*, 994 F.3d 927, 936 (8th Cir. 2021), *reh'g denied* (May 26, 2021) (citing *Legg*, 873 N.W.2d at 771–72).

Montelongo's claim for unjust enrichment cannot stand where a contract exists between the parties. Montelongo pleads her unjust enrichment claim in the alternative to her breach of contract claim. Both claims rely on the same facts. Because St. Ambrose now concedes a contract between the parties exists, contract law governs the parties' dispute. *Cf. McCarthy*, 2021 WL 268242, at *6 ("Moreover, to the extent that Defendant disclaims the existence of any enforceable contract, Plaintiff is allowed to plead alternative theories of relief at this stage under [Federal] Rule [of Civil Procedure] 8(d)(2)." (citing *Chong v. Ne. Univ.*, No. CV 20-10844-RGS, 2020 WL 7338499, at *4 (D. Mass. Dec. 14, 2020); *Salerno*, 488 F. Supp. 3d at 1218; *Ford*, 2020 WL 7389255, at *8–9; *Bergeron*, 2020 WL 7486682, at *9)). Since the parties no longer dispute the existence of a contract, Montelongo's assertion of an alternative theory of recovery under unjust enrichment is directly contrary to her breach of contract claim. *Cf. Kunde*, 920 N.W.2d at 807 ("An express contract and an implied contract cannot coexist with respect to the same subject matter."); *Warner*, 2021 WL 3276375, at *10 ("Because the existence of a contract is no longer in dispute, plaintiff cannot also maintain

her unjust enrichment claim on the same subject matter."); *Barkhordar v. President & Fellows of Harvard Coll.*, 544 F. Supp. 3d 203, 214–15 (D. Mass. 2021) (dismissing an unjust enrichment claim where the parties agreed their relationship was contractual in nature); *Durbeck*, 2021 WL 2582621, at *12 (finding plaintiff's alternative claim for unjust enrichment was not barred as a matter of law where university-defendant denied the existence of a contract). As such, Montelongo cannot plausibly allege an alternative claim under an unjust enrichment theory. Because the Court finds dismissal of Claim II is warranted on this ground, it need not consider the parties' arguments regarding the merits of Montelongo's unjust enrichment claim.

## V.   CONCLUSION

Montelongo fails to identify contract terms promising in-person instruction. Thus, Montelongo fails to plead a plausible breach of contract claim based on an implied promise to provide in-person instruction. However, viewing the facts alleged in the light most favorable to Montelongo, the Court finds she alleges sufficient facts demonstrating St. Ambrose's Course Catalog and website contain implicit promises to provide in-person services and access to on-campus facilities. As such, Montelongo plausibly alleges St. Ambrose breached those terms when it closed campus and moved classes online. Montelongo's breach of contract claim in Claim I survives to the extent it is based on a breach of the implied promise to provide in-person services and access to on-campus facilities. As to Claim II, given St. Ambrose's concession that a contract between the parties exists, Montelongo cannot allege a plausible claim for unjust enrichment. Claim II is dismissed for this reason.

**IT IS ORDERED** that Defendant St. Ambrose University's Motion to Dismiss, ECF No. 5, is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED.**

Dated this 3rd day of March, 2022.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE